UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DERRICK SHARIF SHAHEED WILLIAMS,

                Plaintiff,

-v-

CHIEF DOCTOR SHAABAN; MEDICAL DIRECTOR JANE SANJOSE,

                Defendants.



No. 16-cv-8439 (RJS)
OPINION & ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Plaintiff Derrick Sharif Shaheed Williams, proceeding *pro se*, brings suit against two doctors at Rikers Island, Dr. Morsi Shaaban and Dr. Jane Sanjose (together, "Defendants") pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his medical needs in violation of the Fourteenth Amendment. (Doc. No. 1 ("Compl.") ¶¶ 1, 6, 7.) Now before the Court is Defendants' motion for summary judgment. For the reasons set forth below, that motion is GRANTED.

I. Background[1]

Williams, who claims to suffer from flare-ups of multiple sclerosis ("MS"), alleges that in April 2016 – while he was detained at Rikers Island – Dr. Shaaban improperly took him off medication, Interferon, which Williams used to treat his MS. (Compl. ¶¶ 6–7.) Williams claims

---

[1] The following facts are taken from the parties' Local Civil Rule 56.1 statements (Doc. Nos. 102 ("Def. 56.1"), 107 ("Pl. 56.1")), the affidavits and declarations submitted in connection with the instant motion, and the exhibits attached thereto (Doc. No. 105). Unless otherwise noted, where one party's 56.1 statement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely objects to inferences drawn from that fact. In deciding this motion, the Court also considered Defendants' memorandum of law in support of its motion (Doc. No. 106 ("Mem.")), Plaintiff's memorandum of law in opposition to the motion (Doc. No. 111 ("Opp'n")), and Defendants' reply brief (Doc. No. 108 ("Reply")), as well as the declarations and materials submitted in support of those memoranda.

that even though a neurologist later examined him and re-prescribed Interferon, Dr. Sanjose – another doctor at Rikers Island – improperly refused to issue the medication to him because his medical insurance would not pay for it. (Compl. ¶ 7.) Williams states that he has been forced to use a wheelchair as a result of Defendants' actions. (*Id.*)

Williams initiated this action by filing a complaint on October 24, 2016. (Doc. No. 1.) On February 28, 2018, the Court denied Defendants' motion for judgment on the pleadings because Defendants' motion relied on medical records that were not part of the pleadings. (Doc. No. 90.) On March 30, 2018, Defendants filed this motion for summary judgment (Doc. No. 104), which was fully briefed on May 31, 2018 (Doc. No. 111).

## II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, a court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show

2

a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Additionally, because Williams proceeds *pro se* in this matter, the Court must "read his [submissions] 'liberally and interpret them to raise the strongest arguments that they suggest.'" *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). However, "a *pro se* party's 'bald assertion, completely unsupported by evidence' is not sufficient to overcome a motion for summary judgment." *Carmona v. City of New York*, No. 13-cv-3273 (WHP), 2016 WL 4401179, at *2 (S.D.N.Y. Mar. 1, 2016) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

III. DISCUSSION

To state a claim under Section 1983, Williams must establish that "he was denied a constitutional or federal statutory right and that the deprivation of such right occurred under color of state law." *Rodriguez v. Corizon Health Care*, No. 15-cv-5251 (GBD) (GWG), 2016 WL 3189960, at *3 (S.D.N.Y. June 6, 2016), *report and recommendation adopted*, 2016 WL 3766397

(S.D.N.Y. July 11, 2016). Because it appears that Williams was a pre-trial detainee when the complained-of conduct occurred (Mem. 4–5), his deliberate indifference claim is analyzed under the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).[2] In order to establish a violation of the Fourteenth Amendment on the basis of inadequate medical treatment, a detainee must demonstrate that a defendant was "deliberate[ly] indifferen[t] to [his] serious medical needs." *Nielsen v. Rabin*, 746 F.3d 58, 61 (2d Cir. 2014). To show deliberate indifference to a medical need, Williams must have "a serious medical condition," *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) (internal quotations omitted), which is "a condition of urgency that may result in 'degeneration' or 'extreme pain,'" *Renelique v. Doe*, No. 99-cv-10425 (LTS) (HBP), 2003 WL 23023771, at *12 (S.D.N.Y. Dec. 29, 2003) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). Here, Williams fails to establish a genuine dispute as to whether he suffers from a serious medical condition.

Williams testified at his deposition that he was diagnosed with MS in 1985, and that he suffered from intermittent flare-ups throughout the 1990s. (Def. 56.1 ¶¶ 12, 13, 15.) After suffering a flare-up in the early 2000s, Williams insists that he was admitted to SUNY Downstate Hospital, where imaging revealed several brain and spine lesions. (*Id.* ¶¶ 17, 18.)

Since then, Williams has been admitted to a variety of hospitals and has been administered a battery of exams, with no indication from any visit or test that he suffers from MS. In 2005, he had an MRI of his cervical and thoracic spine; the results did not suggest that Williams had MS. (*Id.* ¶ 20.) In 2009, an MRI of his brain revealed no lesions, an indication of the disease. (*Id.* ¶

---

[2] The Supreme Court has recognized that different standards apply depending on whether the plaintiff is an incarcerated prisoner or a pre-trial detainee. *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . . Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment."). However, even if Williams' claim were analyzed under the Eighth Amendment, the Court's reasoning and conclusion would be the same. *See Darnell*, 849 F.3d at 29 (recognizing that under both the Eighth and Fourteenth Amendment, plaintiff must show an "unreasonable risk of serious damage to his health").

25.) He had another MRI of his brain performed in 2010, and there was again no indication of MS in those results. (*Id.* ¶ 34.) In 2016, Williams was admitted to Bellevue Hospital for chest pain and vomiting blood; his discharge summary from that visit explains that he was "without evidence" of MS and had "no documented evidence of [MS]." (*Id.* ¶¶ 61, 62, 64.) He was readmitted a few weeks later – for what medical staff noted was "a likely factitious disorder" (*id.* ¶ 70) – but was discharged shortly thereafter, with hospital staff noting that "[Williams] claims that he has [MS] but an MRI here in 2010 showed no evidence." (*Id.* ¶ 71.)

Indeed, Williams has put forth no objective evidence that he suffers from MS – aside from self-serving statements in his declaration that he was diagnosed with MS in 1985 and has had intermittent flare-ups ever since. (*See, e.g.*, Doc. No. 105, Ex. D. at 23, 38, 46.) In contrast, Defendants have submitted a host of evidence, spanning many years, contradicting Williams' assertion that he has, or ever had, MS. At least three MRIs – which were conducted in 2005, 2009, and 2010 – showed an absence of MS or related symptoms. (Doc. No. 105, Exs. G, H, I.) In fact, during his 2010 visit to Bellevue Hospital, doctors sought to confirm his MS diagnosis by requesting records from outside sources, but "no records were obtained to show prior documentation." (Doc. No. 105, Ex. I at 5.) That same discharge summary confirmed that "no testing [at Bellevue] showed any evidence of MS." (*Id.*)

When Williams was hospitalized in April 2016, the attending physician noted that his staff had reached out to Westchester County Medical Center – where Williams claims he was initially diagnosed with MS in 1985 – but that Westchester County Medical Center's records made "no mention of diagnostic tests for MS." (Doc. No. 105, Ex. N at 1.) After Williams was readmitted to Bellevue twelve days later, a different physician noted that there was "no evidence" Williams had MS, and that "[v]arious medical claims [were] not substantiated by records requests from various institutions." (Doc. No. 105, Ex. P.) All of this evidence led Defendants' medical expert

5

– a board-certified neurologist – to state that, to a reasonable degree of medical certainty, "there is no medical support for a diagnosis of MS." (Doc. No. 105, Ex. S ¶ 12.) Defendants' expert noted that brain scans of a "patient like Mr. Williams who reported a long history of MS" would reveal "white matter lesions," but in fact, all available scans of Williams' brain "reveal[ed] a normal study, without evidence of demyelinating lesions" (*id.* ¶¶ 11, 12).

Williams offers no evidence challenging these reports or even suggesting that he was once diagnosed with MS. And while Williams stated in his opposition to Defendants' motion that he would bring forth objective evidence of his MS diagnosis after he was released from prison on July 2, 2018 (Opp'n at 1), he has produced no such evidence. Williams also requests that the Court deny Defendants' motion so that the "facts can . . . come out in a trial" (*id.* at 2), and asserts that an unnamed neurologist at Albany Medical Center is "keep[ing] me on MS medications because [I] do have MS." (*Id.*) But Williams provides no evidence of this diagnosis or of this doctor.

Accordingly, Williams has failed to demonstrate any genuine dispute of fact as to whether "his medical condition is objectively a serious one." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Many doctors, over many years, have refused to diagnose Williams with MS. Thus, Williams cannot maintain a claim for deliberate indifference against doctors who revoked his prescription for MS medication, when there is no genuine dispute of fact as to whether he suffers from MS. All the available evidence indicates that he does not.

IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT Defendants' motion for summary judgment is GRANTED. Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be undertaken in good faith, and, therefore, Williams may not proceed *in forma pauperis*. The Clerk of Court is

respectfully requested to terminate the motion pending at docket number 104, to mail a copy of this Opinion and Order to Williams, and to close this case.

SO ORDERED.

Dated: March 29, 2019
New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation